917 A.2d 833

GLOUCESTER COUNTY IMPROVEMENT AUTHORITY, AP-
PELLANT, v. NEW JERSEY DEPARTMENT OF ENVI-
RONMENTAL PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 28, 2006—Decided March 21, 2007.

Before Judges SKILLMAN, LISA and GRALL.

*Joseph J. McGovern* argued the cause for appellant (*Parker McCay,* attorneys; *Stacy L. Moore, Jr.,* of counsel; *Mr. McGovern,* on the brief).

*Bruce A. Velzy,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Maria G. Kelly,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether the recipient of a notice of violation of the Solid Waste Management Act (SWMA), *N.J.S.A.* 13:1E–1 to –225, which orders the immediate cessation of operation of a solid waste facility, is entitled to a hearing to challenge that order. We conclude that such a notice is an order of abatement within the intent of *N.J.S.A.* 13:1E–9(c), which the recipient may challenge in an administrative hearing.

Appellant Gloucester County Improvement Authority is the owner and operator of the South Harrison Township Landfill. Respondent Department of Environmental Protection (DEP) authorized the Authority to operate this landfill pursuant to a solid waste facility permit.

On October 22, 2001, the DEP also issued a solid waste certificate of authority to the Authority and Innovative Recovery Products, L.L.C. (IRP) to operate a demonstration materials recovery facility on the Authority's property. On March 19, 2003, the DEP notified the Authority and IRP it would not review the materials submitted in support of their application to continue operation of the materials recovery facility. The DEP explained that no permit could issue because the Authority and IRP proposed to conduct their activities outdoors and a materials recovery facility must operate within an enclosed building.

On February 15, 2005, the DEP issued a "Notice of Violation" to the Authority, which stated that a violation of the regulations adopted under the SWMA had been observed during a compliance evaluation conducted on February 7, 2005. The notice cited the Authority for a violation of *N.J.A.C.* 7:26–2.8(j), which provides:

No person shall engage or continue to engage in disposal of solid waste in this State in a manner which does not meet all the conditions, restrictions, requirements or any other provisions set forth in its SWF permit.

The notice stated that the alleged violation consisted "specifically [of] the continued operation of a Materials Recovery Facility from March 19, 2003 to February 07, 2005." The notice ordered the Authority to "immediately cease operation of the [Materials Recovery Facility] until [the] appropriate permit has been obtained from DEP." The notice also stated that "[w]ithin fifteen (15) calendar days of receipt of this Notice of Violation, you shall submit in writing, to the individual issuing this Notice, [an] explanation of the corrective measures you have taken to achieve compliance."

Upon receiving this notice, the Authority filed a notice of appeal and request for an adjudicatory hearing with the DEP. The notice

of appeal alleged that "[t]he Authority [has] never operated a materials recovery facility on the Landfill" and that "[a]ny metal recycling activity occurring at the Landfill was performed by [IRP] pursuant to a Certificate of Authority to Operate a Research, Development and Demonstration Project." The notice of appeal also asserted that "[t]he [DEP] cannot, on the one hand, grant to [IRP] a legally valid Certificate of Authority to Operate the metal recycling operation and, on the other hand, after that Certificate terminates, hold the Authority to be in violation of the Landfill permit for some failure or omission related to the metal recycling operation." The Authority claimed that its notice of appeal should be considered a "contested case" and referred to the Office of Administrative Law (OAL).

On March 21, 2005, the DEP sent the Authority a letter, which stated that the notice of violation "cannot be appealed through an adjudicatory hearing" and denied the Authority's request for a hearing. The Authority filed a notice of appeal from the denial of its request for referral of the matter to the OAL for a hearing. The DEP moved to dismiss the appeal on the ground that its denial of the Authority's request for a hearing was not final agency action.

I

Before discussing the Authority's right to a hearing to contest the DEP's order to immediately cease operation of the materials recovery facility, we first consider the DEP's motion to dismiss this appeal on the ground that its denial of the Authority's request for a hearing was not appealable final agency action. The DEP argues that the notice of violation does not constitute final agency action because no adverse legal consequences flow from issuance of such a notice and the Authority must wait until the DEP takes formal enforcement action before seeking judicial review. However, the DEP's argument begs the question presented by this appeal. The Authority contends that the notice of violation constitutes an order of abatement that requires immedi-

ate compliance, and therefore, it is entitled to an administrative hearing to challenge that order. The Authority also contends that the DEP does not afford any opportunity for administrative review of that notice. If the Authority's view of the notice is correct, it constitutes final agency action. Consequently, the Authority is entitled to a judicial determination of whether the notice is an order of abatement within the intent of *N.J.S.A.* 13:1E–9(c). Accordingly, we deny the DEP's motion to dismiss.

## II

■ The Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –25, directly grants a right to an administrative hearing only if a State administrative agency "revoke[s] or refuse[s] to renew any license[.]" *N.J.S.A.* 52:14B–11; *see Christ Hosp. v. Dep't of Health & Senior Servs.,* 330 *N.J.Super.* 55, 61–62, 748 *A.2d* 1156 (App.Div.2000). In all other State agency proceedings, "[t]he right to an administrative hearing ... must be found outside the APA in another statute or constitutional provision[.]" *In re Fanelli,* 174 *N.J.* 165, 172, 803 *A.2d* 1146 (2002) (quoting *Christ Hosp., supra,* 330 *N.J.Super.* at 61, 748 *A.2d* 1156). The APA generally requires the right to an administrative hearing to be found outside the APA by defining a "contested case" as

> *a proceeding,* including any licensing proceeding, *in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined* by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, *after opportunity for an agency hearing* [.]
>
> [*N.J.S.A.* 52:14B–2(b) (emphasis added).]

■ The Authority argues that it has both a statutory and constitutional right to a hearing to challenge the notice of violation issued by the DEP. Because we conclude that *N.J.S.A.* 13:1E–9(c) entitles the Authority to a hearing, there is no need to consider the Authority's constitutional argument.

*N.J.S.A.* 13:1E–9(c) provides in relevant part:

> Whenever the commissioner [of the DEP] finds that a person has violated any provision of [the SWMA], or any rule or regulation adopted ... [thereunder], he

may issue an order specifying the provision or provisions of [the SWMA] or the rule, regulation ... of which the person is in violation, citing the action which constituted the violation, ordering abatement of the violation, and giving notice to the person of his right to a hearing on the matters contained in the order.

Thus, if the notice of violation the DEP issued to the Authority was an "order[]" of abatement of the [alleged] violation," the Authority was entitled to a hearing to contest that order.

The DEP contends that the notice of violation issued to the Authority was not an order of abatement but instead a "warning that [the DEP] issues to assist facilities in their efforts to remain in compliance with the solid waste regulations." The DEP characterizes the notice as simply a "notification" that "a potential violation of a regulation was observed." The DEP also contends that "[f]acilities are not affected ... in any substantive way" by issuance of such a notice.

However, the notice of violation does not appear on its face to be a mere warning that has no immediate coercive impact upon the recipient. After describing the violation, the notice states: "[I]mmediately cease operation of the [materials recovery facility] until appropriate permit has been obtained from DEP." The notice goes on to state: "Within fifteen (15) calendar days of receipt of this Notice of Violation, you shall submit in writing, to the individual issuing this Notice, [an] explanation of the corrective measures you have taken to achieve compliance." In addition, the notice states that "[i]ssuance of this Notice of Violation serves as notice to you that the [DEP] has determined that a violation(s) has occurred and does not preclude the State of New Jersey or any of its agencies from initiating administrative or judicial enforcement action, or from assessing penalties ... with respect to this or other violations." The notice further indicates that such penalties may be as much as $50,000 per day. The notice also states that "[t]his violation[] has been recorded as part of the [Authority's] permanent enforcement history[.]"

We conclude that this notice constituted an order of abatement within the intent of *N.J.S.A.* 13:1E–9(c). It contains an administrative finding that the Authority is in violation of regulations

adopted to implement the SWMA; it orders the Authority to immediately cease operation of the materials recovery facility; and it states that the Authority is subject to penalties if it fails to obey the order. Furthermore, the notice does not indicate that the Authority may obtain formal or informal review of the order within the DEP. Thus, the notice placed the Authority in a position where it had to either obey the DEP's order to cease operations or subject itself to monetary penalties. The notice was similar in this respect to an injunction. The notice also subjected the Authority to whatever adverse consequences may flow from its inclusion in the Authority's "permanent enforcement history" maintained by the DEP. *See N.J.A.C.* 7:26–5.5(i)(1) (providing that one of the factors to be considered in determining the amount of a civil administrative penalty under the SWMA is "[t]he compliance history of the violator").[1]

We also conclude that because the notice contains a finding that the Authority is operating in violation of *N.J.A.C.* 7:26–2.8(j) and orders the Authority to cease operation of the materials recovery facility, it constitutes a "determination" of the "legal duties" of a "specific part[y]" that must be made "after [an] opportunity for an agency hearing" under *N.J.S.A.* 52:14B–2(b). Therefore, the Authority's challenge to the order is a contested case with respect to which it is entitled to an administrative hearing before the OAL under *N.J.S.A.* 52:14B–9.

---

[1] The Authority contends that inclusion of the notice of violation in its enforcement history could result in a revocation of or jeopardize renewal of its solid waste facility permit. The Authority also contends that the notice could undermine its ability to obtain bond financing. The DEP asserts that these concerns are exaggerated, and that the Authority would have the opportunity to challenge the alleged facts underlying the notice of violation in any subsequent action relating to the revocation or non-renewal of its license. We have no need to resolve this dispute concerning the potential consequences of inclusion of the violation in the Authority's enforcement history because we conclude the notice would constitute an administrative order of abatement even if it were not included in the recipient's enforcement history.

The DEP contends that there are no facts in dispute in this case. We are unable to determine based on the limited record before us whether this is true. However, if the DEP believes this case is suitable for disposition without an evidentiary hearing, it may move before the OAL for a summary decision under *N.J.A.C.* 1:1–12.5. *See Contini v. Bd. of Educ. of Newark,* 286 *N.J.Super.* 106, 114–22, 668 *A.2d* 434 (App.Div.1995), *certif. denied,* 145 *N.J.* 372, 678 *A.2d* 713 (1996); *see also Bd. of Educ. of Upper Freehold Reg'l Sch. Dist. v. State Health Benefits Comm'n,* 314 *N.J.Super.* 486, 494, 715 *A.2d* 358 (App.Div.1998).

█ Finally, we note that if the DEP considers it desirable to administer a system of informal warnings under which a regulated party may be notified of an apparent violation of the SWMA without being ordered to take immediate corrective action, it should modify its form notice of violation to clearly reflect the fact that the document is intended to be a warning only. Moreover, if the DEP affords an opportunity for informal review of such a warning, the procedure by which that review may be obtained also should be clearly set forth in the notice. However, the DEP may not issue a notice that appears on its face to be an administrative order that compels the recipient to take immediate action, but then, if the order is subject to judicial challenge, take the position that it is a "mere warning" issued as a courtesy to regulated parties "to assist [them] in their efforts to remain in compliance with [the SWMA]." The DEP, like other government agencies, has a duty to "turn square corners" in its dealings with those it regulates. *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 426, 495 *A.2d* 1313 (1985). This includes the duty to clearly inform regulated parties of the actual legal consequences of any notice or order the agency issues. *See DeNike v. Bd. of Trs. of Pub. Employees' Ret. Sys.,* 34 *N.J.* 430, 434–35, 170 *A.2d* 12 (1961).

Accordingly, the DEP's denial of the Authority's request for an adjudicatory hearing is reversed and the case is remanded to the DEP to refer to the OAL.